J-S36015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: D.E.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.A., MOTHER | No. 1647 WDA 2014 |

Appeal from the Order entered August 4, 2014
in the Court of Common Pleas of Westmoreland County
Orphans' Court, at No(s): 151 of 2013-D

BEFORE:  PANELLA, J., JENKINS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 26, 2015**

E.A. ("Mother") appeals from the order entered on August 4, 2014, terminating her parental rights to her female child, D.E.A., born in March 2010, ("Child") pursuant to Sections 2511(a)(1), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2910.  We affirm.[1]

The Westmoreland County Children's Bureau ("the Agency") initially obtained custody of Child, along with her older brother, R.A., born in May 2004, on March 3, 2011, after a shelter care hearing.  Custody was based on concerns regarding Mother's drug use and Father's intoxication while the children were in their care.  Both children were adjudicated dependent on March 22, 2011, and legal custody was transferred to a maternal aunt ("Maternal Aunt").  The case was closed at that time and general protective services continued.

---

* Retired Senior Judge assigned to the Superior Court.

[1] C.B. ("Father") consented to the termination of his parental rights and the change of goal to adoption of Child; he is not a party to this appeal.

Maternal Aunt was unable to continue caring for Child and Mother was unable to progress with the offered services. Child and R.A. were again adjudicated dependent on December 6, 2011. Child has been under the custody of the Agency since that time and was once again placed in foster care.

Child's initial permanency goal was reunification with Mother. The agency established the following Family Service Plan ("FSP") objectives for Mother, in part: to undergo drug and alcohol evaluations and comply with any recommended treatment, including random drug screens, to undergo a mental health evaluation and comply with any recommended treatment, to set up and follow a budget, to obtain proper housing, and to maintain proper parenting skills. Throughout the permanency review periods, Mother continued to make only minimal progress toward alleviating the circumstances that led to placement and only minimally complied with the FSP. Mother continued to test positive for illegal substances, including marijuana, opiates, and cocaine.

Mother has had supervised visitation with Child since Child was removed from Mother's home at the age of 11 months. Mother's attempts to interact with Child following her loss of custody have always been under the supervision of a social worker.

Based on Mother's and Father's lack of compliance and progress, the Agency filed a Petition to Involuntarily Terminate Parental Rights on

February 19, 2014. A hearing was scheduled for February 9, 2014, but was rescheduled and held on April 10, 2014, and July 14, 2014. On May 22, 2014, following the initial hearing, Child and her siblings were removed from the foster home in which they were residing and placed in another foster home. The agency removed the children because of concerns about the quality of parenting by the foster mother.

During the hearings, the trial court was presented evidence showing that Mother has continued to battle drug addiction, has been in and out of drug treatment programs, and has passed and failed periodic drug tests. At the conclusion of the hearing, the court provided Mother's counsel with an opportunity to submit authority in support of her position against termination of Mother's parental rights, but no authority was submitted within the ten-day time period allotted. In an order entered on August 4, 2014, the trial court involuntarily terminated both Mother's and Father's parental rights.

An issue arose regarding proper service of the trial court's termination order on Mother's counsel, as counsel represented that she had not received a copy of the order. Mother's counsel filed a motion raising the matter before the trial court and the court granted her request to recognize that the thirty-day period had not yet run in accordance with Pa.R.A.P. 108(a)(1), due to the lack of service by the court. On September 16, 2014, Mother

filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

We review the termination decree according to the following standard.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we [have] discussed[, …] there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

- 4 -

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Applying this process to this case, we first look at the termination of Mother's rights to Child under section 2511(a). The trial court terminated Mother's rights pursuant to subsections (a)(1), (a)(5), and (a)(8). This Court need only agree with the trial court's decision as to any *one* subsection of section 2511(a) in order to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We will therefore examine the facts under section 2511(a)(1) and (b), which provide as follows.

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows.

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.  In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties.  Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1)

if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

Regarding the definition of "parental duties," this Court has stated as follows.

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010), this Court instructed that

> [t]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*Id*. at 1119 (quoting *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999)).

The trial court found that, for a period of at least six months prior to the Agency's filing of the petition to terminate Mother's parental rights, Mother failed to perform parental duties on behalf of Child. While Mother may not have had a settled purpose to relinquish her claim to Child, she failed to perform parental duties for Child for a period of time exceeding two years while Child was placed in the care of family members and in the Agency's care. The trial court found that Mother was not the primary caretaker of Child, and she did not take care of Child's daily needs with regard to discipline, education, health care, bathing, bedtime, and feeding.

The evidence revealed that Mother had visitation throughout Child's dependency, but the visits were always supervised through Family

Resources and then through Total Family Services. Carla Rhodes, a licensed social worker from Total Family Service testified at the hearing that Mother and Child merely co-existed during the visits. Ms. Rhodes stated that she could not recall one time when Child requested that Mother play with her. Mother would frequently choose to bring non-interactive activities, such as movies, instead of using the time to interact with Child. Ms. Rhodes further testified that, even when given the opportunity to conduct activities with Child, Mother failed to take the opportunity to help or teach Child. For example, when Child was unable to do as Mother directed with glue, Mother took the glue from Child, and used it herself rather than helping Child to complete the task.

During visits between Mother and Child, Child's two siblings were generally present. Ms. Rhodes testified that, during the visits, Child's older brother would step in and take over the parenting role to fulfill Mother's shortfalls in caring for all three children. Ms. Rhodes noted that Child does not recall a time of living with Mother on a daily basis, and is not familiar with Mother in a parenting role.

The trial court determined that, while Mother was consistent in attending her visitation with Child, Mother did not utilize the opportunities to interact with Child and perform her parental duties during the visitations. Thus, the trial court did not err in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) based on Mother's continued failure

to perform parental duties on behalf of Child for a period of more than six months preceding the filing of the termination petition in this case.

We have stated that

a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. Moreover, the parent wishing to reestablish [his or her] parental responsibilities bears the burden of proof relative to post-abandonment contact.

*In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super. 2008) (*en banc*) (citations and internal quotation marks omitted). We will not toll the well-being and permanency of the children indefinitely in the hope that a parent will summon the ability to handle the responsibilities of parenting them. *See id*. at 1007-1008.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See id*. at 1009. This Court has stated that the focus in terminating parental rights under subsection (a) is on the parent, but it is on the child pursuant to subsection (b). *See id*. at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. …

- 10 -

[Our Supreme Court] held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and some quotation marks omitted).

Regarding subsection (b), the trial court set forth the case law that provides that the best interest of the child is determined after consideration of the needs and welfare of the child, and that CYS must prove that termination is in the child's best interest by clear and convincing evidence.

The trial court received testimony from Carol Hughes, a licensed psychologist. Ms. Hughes conducted a bonding assessment with Child, which consisted of observations on June 18, 2013, and on October 17, 2013. The first observation occurred at the foster home; the second observation occurred at a supervised observation.

Ms. Hughes noticed that Child did not seek Mother's assistance when she needed help with a task. Instead, Child sought help from Ms. Hughes. The only interaction that Ms. Hughes observed between Child and Mother occurred when Child was mirroring the interaction between her older sibling and Mother.

Ms. Hughes also questioned whether Mother would be capable of interacting with Child in a way that would aid her development, and whether Mother would engage with Child to promote healthy attachment experience.

Ms. Hughes further determined that Child had no "security in a bond" with Mother, and had only affection for her. N.T., 7/14/2014, at 40. Ms. Hughes noted that Child does not exhibit an expectation that Mother is going to demonstrate involvement with her.

Also, according to Ms. Rhodes Child did not seek hugs and kisses from Mother. Ms. Rhodes observed that, out of the 135 times that she observed Mother, she only saw approximately twelve times when Mother sought affection from Child. Thus, after one year of services from her agency with no progress toward reunification, Ms. Rhodes recommended that Mother's parental rights be terminated.

In addition, Susan Storer, an agency caseworker, along with Ms. Hughes and Ms. Rhodes, recommended termination of Mother's parental rights to best provide for the needs and welfare of Child.

The trial court also determined that termination serves the best interests of Child. Child has been in placement for almost three years. Child was not even a year old at the time of the initial adjudication and barely a year old at the second adjudication. The court found that the majority of the life that Child has known has occurred outside of Mother's care. Ms. Hughes opined that there would be no significant impact to Child's development if Mother's rights were terminated. Ms. Hughes stated that Child needs a caregiver who can provide her with stability and quality parenting. Child

needs a caregiver who can provide her with positive and healthy attachment experiences.

We observe that Child's placement did change unexpectedly in May 2014. Child was moved with her siblings to a new pre-adoptive foster home due to allegations of physical discipline by her former foster mother. Ms. Storer testified at the hearing that Child is doing well, and that her new foster parents are qualified to care for her and love her. Although Child's new foster parents have the potential to be a pre-adoptive home, the statute requires a child remain in foster parents' placement for at least six months before an adoption can occur.

We find that the trial court appropriately considered all of the factors for a bond analysis under subsection (b), and its discussion is consistent with our Supreme Court's decision in *In re: T.S.M.* Further, we find the trial court's conclusions supported by competent evidence in the record. *See In re: Adoption of S.P.*, 47 A.3d at 826-27.

Accordingly, we affirm the trial court's order terminating Mother's parental rights to the Children under Section 2511(a)(1) and (b).

Order affirmed.

Judge Jenkins concurs in the result.

Judge Strassburger files a concurring memorandum in which Judge Jenkins joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2015